United States Secretary of Commerce et al. Mr. Zielinski, I thank you for the appellant. Ms. Batty for the appellate. Mr. Zielinski, please. Judge Henderson, and may it please the Court, the appellant in this case, Anthony Perry, was a long-time civil servant at the Census Bureau. He brought a mixed case in the federal district court, and that court erred in its adjudication of the mixed case in two independent respects. First, the district court should have afforded Mr. Perry to no vote proceedings on his freestanding federal discrimination claims. And second, the district court erred in its analysis, reviewing APA-style the Merit System Protection Board's decision to hold an extremely limited jurisdictional hearing in this matter. I want to begin with the first issue, which was the matter that the motions panel specifically directed me to address. The government now agrees with us that Mr. Perry deserved to no vote proceedings in the district court on those freestanding federal discrimination claims. But in this appeal, the reason is almost as important as the result. The panel has the opportunity to make it clear that when federal employees like Mr. Perry receive a judicially reviewable decision from the Merit Systems Protection Board, they may immediately appeal in the federal district court. The government is incorrect when it continues to suggest that employees situated as Mr. Perry is have some other obligation to exhaust their claims in some other way before some other agency proceeds. In this particular case, though, he did exhaust, so we don't really need to reach that issue. So Judge Pan, I think that you can opine on it because it's part and parcel of the district court's decision. It's essentially the district court decision wrapped up in a new guise. What the district court said was, I can't look at these claims because the Merit System Protection Board reached a jurisdictional decision. What the government is now suggesting and what it continues to suggest at page 19 of its brief is in a future case involving a jurisdictional decision, the district court won't be able to address it unless it's separately exhausted before the EE office. So I think it's the exact same theory that the district court presented, and it's wrapped up in a new guise. I think there's a pressing need for guidance here because, as Justice Ginsburg noted, in these cases you typically have a pro se party proceeding on one side and the Department of Justice proceeding on the other. The employees are often confused as to what they should do, and I think a decision from this court that's very clear that it just doesn't matter what happens. All you have to do is receive that judicially reviewable action, and then in Mr. Perry's case it didn't matter. So does that give an employee in Mr. Perry's situation who has a mixed case an advantage over an employee who has only a discrimination case? Isn't it more burdensome to exhaust through the EEOC than it is just to file an appeal with the MSPB? So I don't think it's actually more or less burdensome one way or the other. Mr. Perry actually had the option in this case to initially proceed in front of the agency. The way 7702 and 7703 are written is that an employee can choose. They can choose to go in front of the agency or they can choose to go in front of the Merit System Protection Board. And as to the question about whether it might be easier, Congress decided that it wanted to give employees who had these mixed cases the option. They could either proceed in front of the agency in the EEO process or they can proceed in front of the board. Well, they haven't clearly said whether you still have to exhaust or not. Well, I think they have. In the agency. I think they have because 7703b2 is very clear. Once you have a judicially reviewable action, you can proceed in 30 days. The government, if you read 7703b2 to do something else, then in every single mixed case you would have to exhaust separately your claims. And that would actually result in the exact kind of claim splitting that Justice Ginsburg was clear in this very case doesn't have to occur. It wouldn't matter whether the decision of the board is labeled jurisdictional, procedural, or on the merits. If you read the statute to not permit the discrimination claims to proceed, what you force the employee to do in every case would be to split those claims. And this court has never required that. Instead — But this hasn't been the focus of the briefing in this case, and I think that's because, factually speaking, he has exhausted. So I don't know why this is the right case for us to decide something that seems kind of important and we haven't had the full benefit of — So I understand the concern, Judge Pan. I think what might be helpful would be to flag this as an issue going forward so at least it's in — when the panel writes its decision, it's at least in the panel decision that there were arguments ventilated on this issue so that the next pro se litigant that comes forward is able to flag this. Mr. Perry, when we got to the — when he got in front of the court, he identified the key problem. He said, I deserve de novo proceedings. I have my judicially reviewable action from the Merit System Protection Board. He was able to do that because he had a Supreme Court decision in this case bearing his name. The next pro se party may not have that, and so I think some guidance, even if it's simply to flag the issue, would at least be helpful to the district courts that are often left trying to figure this matter out and have, frankly, on the one hand, the government, on the other hand, a pro se party, which can be difficult. I want to briefly turn, unless the panel has any questions on this issue, to the way in which the board erred in this case. Mr. Perry's allegations in front of the board were fulsome. Mr. Perry alleged that he was given a disability accommodation for a crippling osteoarthritis. Mr. Perry then alleged that in 2011, his supervisors threatened to terminate him for following that disability accommodation. As a matter of board precedent and, frankly, as a matter of basic fairness, an employee has to be given some notice that the rules have changed before the agency can terminate that employee. So putting aside the allegations about informal accommodations for his disability, your client also admitted that he worked on EEO complaints in his car when he was supposed to be at work and that he felt emotionally unable to attend some meetings and didn't go. So why don't those admissions support a reasonable belief that they had a right to fire him, making this voluntary? So, Judge Bann, before I answer the question, I want to make it clear that Mr. Perry is not my client, that I was appointed by the court as an anarchist. Oh, that's right. So I don't actually represent Mr. Perry. And I am obviously arguing on his behalf. The answer was that Mr. Perry had a flexible work schedule. So he was given a flexible work schedule, and he alleges that repeatedly. At JA-98, for example, he says that my supervisor told me that, you know, I could make up time off on the weekends and in the evenings, et cetera. And when you have a flexible work schedule, as to the working on the EEO complaints, it is quite possible that Mr. Perry believed that he, given this broad, flexible schedule, was able to some days. Do you think that's a reasonable belief, that during work hours you can go to your car and work on an EEO complaint? I think it goes to the factual questions about the nature of the accommodation and what in this particular case, as it comes to this court, the board decided it's equivalent of a motion to dismiss. So there was no hearing on this issue. There was no factual development. So your question, Judge Pan, I think goes to a factual issue that the board should have fleshed out, and that would have required, among other things, some testimony maybe by his supervisor, by Mr. Perry. But it's a standard of reasonableness, though, isn't it? It's like they have to reasonably believe that they had a basis to terminate him. And working on EEO complaints in your car does not provide such a basis? Even if you have a flexible plan, is it reasonable to think that you can do that? Well, so, Judge Pan, I do think it might be reasonable. Let me maybe provide an analogy. I'm an attorney who works a flexible schedule. No one cares whether I show up 9 to 5. And there may be days where I stay at home and I don't work, and instead I do something else on a Friday. And then I work and make up that time on a Saturday and a Sunday. Depending on the nature of Mr. Perry's claims, it may be or the nature, sorry, of the accommodation and the flexible work schedule, it may be that Mr. Perry quite reasonably believed that, yes, he could take his time to work on his EEO complaint. And then, given the nature of that broad, flexible schedule, then he could make that time up on the weekend. But that's a factual matter. No, but it seems like you're taking the position that a flexible schedule means that an employee can do anything they want, including skipping meetings because he feels emotionally unprepared to go to them. So I think that's a separate issue, and it's actually not one that the board focused on. The board did not focus on the lack of attendance in meetings. What the board instead focused on was that he was, for instance, taking lunch breaks, that he once worked on his car on the EEOC issue. And the government has no response, by the way, on the lunch breaks. So every employee, it appears, was given these lunch breaks, and they were held against them in Mr. Perry's case. But as to the working in the car, it, again, depends on the nature of the flexible schedule. I understand your argument on that. My only other question on this point is the attendance log. You say in your brief that that was not, I guess, fair because other employees were not required to sign the attendance log, and he was. But I don't see why it would be unfair to require the employee who actually had attendance issues, who did things like work on EEO complaints in the car, to do that and not require other people who didn't have attendance issues to log in. So, Judge Pan, that may be a reasonable way for the board to have resolved this case. The board gets great deference. That's not in the board opinion.  Well, it's only because you raised that in your brief as a reason. I think the board did rely on the fact that he didn't sign the attendance log. And then you argue, well, you can't make him sign the attendance log if you don't make everybody sign the attendance log. But I think the board can say we reasonably relied on the fact that we told him to sign the attendance log. He didn't sign it. But the problem, Judge Pan, is that Mr. Perry also flagged to the board. This is a JA-116. He says, quote, no other GS-14 or GS-15 supervisory IT specialist was being required to sign in. And so what Mr. Perry said to the board was I was essentially being treated separately, disparately from other employees. But if the board reasonably thinks that that's appropriate because he's the one with the attendance problems, why isn't that sufficient? The problem is that explanation, Judge Pan. I agree with you that that could be an explanation. That explanation would have to appear on the face of the board's opinion, and it doesn't. And so if the board had said that. But why is that? Why is that? We give them great deference. The flip side of the great factual deference is a Chenery requirement, which is the requirement to articulate the agency's reasoning, in this case the board. If the board's opinion isn't reasoned, then the court is being asked to doubly defer, defer on factual determinations. No, I understand that. But if the board says we're relying on the fact that we told him to log in and he did not, we can discern that that's why. And then you're raising all these arguments as to why that's not sufficient. But if they're not merit, they have no merit, why can't we just defer to the board's reasoning? Because the board never addressed it, Judge Pan. So the board, I agree with you, could have said we think potentially in this circumstance the agency has shown why, even under Mr. Perry's allegations, it might be reasonable to hold Mr. Perry to the sign-in log and not everybody else. The problem is that the agency didn't do that here. And when an agency is like the board, is given great deference in its ultimate factual determinations and great deference on its actual determinations on the merits in terms of what remedies to give or not give, I think it's incumbent on the agency to follow the analysis that you provided. And I want to stress this is not an argument I made up in my brief. This is what Mr. Perry argued again at J116. The board just ignored it. What the board should have done is said, given that Mr. Perry alleged that there was a whole host of other GS-14s and GS-15s who were not being required to sign in, could the agency that threatened to terminate him reasonably believe in that circumstance that it could terminate him? And it might be that that goes to a hearing. And at the hearing, Judge Pan, the agency says, yes, we were doing this to track Mr. Perry in particular because we had specific concerns about Mr. Perry. But that's a series of leaps and inferences that don't appear on the actual face of the board's decision. So, counsel, assume we agree with you on this attendance log point. Clearly, the primary thing the board was focused on was the first ground for the discharge. If we thought the first one was substantiated but not the second, how should we think about that? It seems one reasonable way would be to think the agency still had a reasonable basis to fire him for the first batch of misconduct that Judge Pan was focusing on. So obviously I would, and I'm not going to fight the hypo, which is that we don't think that the agency was reasoned on either ground. I think you might still send it back down to the board at that circumstance to determine whether when there is a justification for firing someone and one of the justifications happens to be totally irrelevant or not substantiable, would you still have fired him? And would you have known you could fire him in that circumstance? So I think there are a number of questions that might flow from that that the board might still want to answer in the first instance. And it may be that the board says, yeah, we're going to continue to abide by our decision, at which point it will go back to the district court for de novo review or de novo proceedings on those freestanding federal discrimination claims. Okay, I appreciate that. So on the first ground, there's sort of part of that charge is that he was entering his time inaccurately. So you not only have to show that he had this very unusual accommodation where he could make up his time on Saturday for work that he didn't do on Monday, but then he could enter that he worked eight hours a day on Monday. And I think one difficulty for Mr. Perry is he doesn't ever say that was approved, which would be a little bit of a stretch. So I actually think he does, Judge Garcia. In the record, he repeatedly says that his supervisors approved his time cards, and those are the same supervisors that are also approving his flexible work schedule. So I actually think logically that's precisely what he's arguing. And I think that actually that highlights exactly what the board didn't do, Judge Garcia. The board did not decide, you know, that it didn't parse it apart and say, well, the time card issue was really the issue, and based on his allegations, that was a problem with the time cards. And so I think this all has to go back down to the board, at a minimum, for it to articulate some reasoning. So essentially on 707, right, there is a sentence that refers to this issue. It says he conceded that several of the specifications were attributable to failed communications and times when he failed to correct time in attendance for leave taken. And that's referring to his initial response. And it seems like so is your response depends on his later statements in other documents? So I think, Judge Garcia, to be candid, there are a series of contradictory statements all over Mr. Perry's pleadings because he is a pro se litigant. So I think that the board would then have to explain why it's cherry picking out specific proceedings, specific sentences, and not looking at other sentences, because there are other sentences where Mr. Perry is very clear. No, in fact, my supervisors knew exactly what I was doing. And I think that perhaps an analogy might help, which is the board was proceeding at the equivalent of a motion to dismiss stage. If a district court looked at a complaint at the motion to dismiss stage and did this, it sort of cherry picked and drew what are at the end of the day credibility determinations or it sort of fly specked the complaint. I think this court would say, no, that's inappropriate. You have to have some factual development. You look at the allegations that are fulsomely alleged, and you, in this court's vernacular, you sort of take those in the light favorable to the pleading party. That's essentially where the board was. If there are no further questions, I will. I will give you a couple minutes in reply. Thank you very much, Judge Henderson. Ms. Patti? Good morning, Your Honors, and may it please the Court. I'd like to start with the discussion of this coercion theory that is now being presented. And the question here is whether the Census Bureau knew or had reason to know that it had no basis for proposing to remove Mr. Perry. That is just not something anybody can plausibly allege given the circumstances. If we look at what the Census Bureau knew at the time, they knew that Perry was absent for over 133 hours over this time period, sometimes for entire days, sometimes for entire afternoons. They knew that Perry received pay for these hours because he misrepresented the time he was at work on his timesheets. They knew that he refused to follow supervisory directions, despite being told repeatedly that the attendance large requirement was mandatory. And these facts, as described by the Census Bureau, amply support the proposed removal, and they are corroborated by Perry's own statements afterwards. Perry acknowledges that punishment is warranted, he says that on page 140 of the appendix, including repayment of the debt that he believed he owed the agency for receiving time for pay, excuse me, for time when he was absent from work. He does say that he failed to complete leave requests or correct his time in attendance records. And he also says that he failed to follow the supervisory directive not to sign the attendance log, excuse me. And in the notice of proposed removal, he does not advance this theory that he, during this time he was teleworking in his response to the notice of proposed removal. Assume he stated adequately that this sign-in log requirement was applied to him and only him, out of retaliation. Would not signing the log still be a basis to fire him? So I also want to, just as a factual matter, point out that in his response to the notice of proposed removal, he does not make this point. He says … Take as given he makes inconsistent statements in his various statements, but I'm not sure that amicus is wrong that when you, if it was in one single complaint, we wouldn't say, you know, hey, you messed up on page 10. We would read it in his favor. Even so, Your Honor, employees who do not follow directives might say, might point to other employees in the offices and say that their circumstances were the same and that the requirement should have been applied to them too. But that doesn't mean the Census Bureau have no basis for proposing to remove him. That an employee might have arguments on the back end or excuses on the back end for why he was refusing to follow this mandatory procedure does not at all remove the basis for the firing. And that really is the question because the ultimate question we are looking at here is whether this was voluntary. This theory of coercion is a subsidiary question, and there is just no basis to say that the Census Bureau had no grounds for proposing to remove him. There was some discussion of the exhaustion issue. Is the government committing not to raise that argument in the future in this litigation? Absolutely, Your Honor. I want to be extremely clear that the issue is not presented here. So on the issue of the discrimination claim, it seems that you misled the district court because you characterized the whole issue as jurisdictional, the jurisdictional issue as a threshold issue, implying that the district court didn't need to reach the discrimination issues. And I'm just wondering why did you do that and why are you taking a different position now? We do think that the district court erred in this respect and therefore are recommending that the discrimination claims be remanded in accordance with appellant's wishes and what we believe to be the correct answer here. In district court, it would not have been inappropriate to consider the MSPB jurisdictional issue first as a threshold issue because if the district court found that the MSPB had jurisdiction, it would send it back to the MSPB. And so the question whether the MSPB jurisdictional determination could be considered alone as a threshold issue, I think it would be appropriate. I will note that the government in its motion for summary judgment did recognize that at this juncture, the court was not considering the merits of the discrimination claim and endeavored to preserve its arguments in that respect as to the merits of the discrimination claim. And we point this out on pages 17 and 18 of our brief in this court. But I suppose you could have filed something with the district court after this order came out if you all recognized that there was an error and we might not be here today. Your Honor, there is quite a process for the government in determining whether to take this step and we followed that process and we are here today with what we believe to be the correct result. So if there are no further questions, we ask this court to affirm the jurisdictional dismissal and remand on the discrimination claims. All right. Thank you. Thank you. I just want to make two very brief points. Judge Pan, as to your question to my friend on the other side, whom I have great admiration and respect about why the government misled the district court, I think it was clear that the government misled the district court and that's why I'm asking this court to provide clear guidance to district courts going forward. If you look at document 34-3, that is the government's brief that it filed below, the government was very clear about the relief it requested. This is page 12. The government said, for the reasons set forth above, defendant respectfully requests that the court affirm the jurisdictional determination of the MSPB and dismiss this case. If you go to the footnote that my friend on the other side references, and that is at page 7 of the same document, the government goes on to preserve if and only if the case, the entire action is not dismissed for lack of jurisdiction. So the government was very clear below that it thought these entire things traveled together. It doubled down in this court when Mr. Perry, to his credit, filed a pro se motion for summary reversal. The government said, no, no, no. I've come up with another reason why the district court is correct. So the reason that I am maybe a little too hot under the collar and requesting that the panel provide some guidance going forward is because there is a great imbalance in these cases between pro se parties and there is a great and pressing need for some guidance going forward so that those pro se parties in the district courts are not left in the lurch. I also just want to make one factual point about what Mr. Perry didn't raise in front of the agency. My friend on the other side suggested that Mr. Perry, in the jurisdictional dispute with the board, never raised in his response to the initial jurisdictional determination these various different points about, for instance, the fact that other employees were not required to sign the log. He did. The document that begins at page JA114 is titled Complainant Response to Order on Jurisdiction of Board in this Matter. At JA116, Mr. Perry then goes on to explain the issue, Judge Garcia, that you and I were discussing about the other individuals who were not disciplined for this behavior. He also discusses as well the broad disability accommodation he had. For those reasons, we would respectfully request that the court reverse this decision and remand for further proceedings. Thank you. All right. Mr. Zielinski, you were appointed as our amicus, and you've done an outstanding job. And we thank you, and I also note you have a wonderful teacher in Ms. Stetson. I do, and I'm very appreciative of Ms. Stetson. Thanks a lot. Thank you very much, Judge Henderson.
judges: Henderson, Pan, Garcia